[Cite as *State v. Parke*, 2023-Ohio-1144.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,              :

                                          No. 111868

    v.                               :

RICARDO PARKE,                          :

    Defendant-Appellant.             :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 6, 2023

---

Criminal Appeal from the Cuyahoga County Common Pleas Court
Case No. CR-20-654987-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Lisa J. Turoso, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Robert McCaleb, Assistant Public Defender, *for appellant.*

ANITA LASTER MAYS, A.J.:

{¶ 1} Defendant-appellant Ricardo Parke ("Parke") appeals his convictions and asks this court to reverse and vacate. We affirm his convictions.

## I. Procedural History

**{¶ 2}** After a jury trial, Parke was found guilty of one count of rape, a first-degree felony, in violation of R.C. 2907.02(A)(2); one count of kidnapping, a first-degree felony, in violation of R.C. 2905.01(A)(4); one count of domestic violence, in violation of R.C. 2919.25(A), first-degree misdemeanor; one count of disrupting public services, a fourth-degree felony, in violation of R.C. 2909.04(A)(3); and aggravated menacing, a first-degree misdemeanor, in violation of R.C. 2903.21(A).

**{¶ 3}** The trial court determined that all of the offenses were allied offenses of similar import and merged them. Parke was sentenced to six to nine years' imprisonment, pursuant to the Reagan Tokes Law. Parke's trial counsel noted his objection to the imposition of Reagan Tokes as unconstitutional to preserve the issue for appeal.

## II. Facts

**{¶ 4}** On December 4, 2020, K.K., Parke's ex-girlfriend and mother of his daughter, scheduled a ride from Uber to take her from her job to her daughter's babysitter's home. On the way, Parke called K.K., and they agreed that K.K. would reroute her Uber to Parke's home to pick up K.K.'s packages that were delivered to Parke's home. Parke agreed to take K.K. to pick up their daughter from the babysitter's home.

**{¶ 5}** When K.K. arrived at Parke's home, she called Parke and asked him to come outside and bring the packages with him. K.K. testified that Parke told her

to come into the home because he was not dressed and ready to leave. K.K. walked into the home and sat in Parke's dining room. K.K. stated that Parke was sitting on the couch, and they both were on their phone. Parke walked over to K.K. and began kissing her and requested that K.K. go upstairs with him. K.K. told Parke that she did not want to have sex. Parke left and went upstairs, and K.K. went to the living room to look through the mail and open her packages.

{¶ 6} K.K. testified that Parke came back downstairs, and when she turned around, Parke attacked her. K.K. stated that she started fighting him off, tried to get to the front door, but Parke slung her across the room. Parke was hitting K.K. in the head and choking her for about a minute or two. During the tussle, K.K.'s phone fell out of her pocket, and Parke grabbed the phone, ordering K.K. to go upstairs. K.K. went upstairs, and Parke followed her. Parke told K.K. to sit on the bed and ordered her to unlock her phone. K.K. unlocked her phone.

{¶ 7} Once the phone was unlocked, Parke opened the Instagram app and began looking through K.K.'s messages. Parke discovered that K.K. was following a male friend and told her to call the male friend to tell him that K.K. would not talk with him anymore. Parke handed the phone to K.K. and K.K. dialed 911. Parke snatched the phone out of K.K.'s hand and hung up the phone. According to K.K., the police called back and left a voicemail. After taking the phone from K.K., Parke sent a message to K.K.'s male friend. The friend called K.K.'s phone, and Parke spoke with the friend.

{¶ 8} As Parke continued his conversation, K.K. ran down the stairs and out of the house through the side door. When she got to the driveway, Parke caught up with her and started pulling her into the house. K.K. began screaming and Parke covered her mouth. Once Parke pulled K.K. into the home, he told her to "get upstairs before I hurt you." (Tr. 358.) K.K. testified that once they were back upstairs, Parke pulled a gun out of a red container and told her "if the police come, I'm gonna hurt you." (Tr. 359.) Parke set the gun on the dresser along with K.K.'s phone.

{¶ 9} Parke took K.K.'s socks and pants off and started kissing and rubbing on her. He requested sexual favors. K.K. complied. Then Parke had sexual intercourse with K.K. (Tr. 362.) Parke ejaculated on the bed. After K.K. went to the bathroom, and came back to the bedroom to get dressed, Parke and K.K. went downstairs, and K.K. retrieved her purse. Parke told K.K. to leave the purse, and K.K. put it on the stairs. They went outside and got into the car. Parke drove K.K. to the babysitter's home.

{¶ 10} Parke and K.K. arrived at babysitter Delores King's ("King") home and both walked to the house. King testified that she observed Parke pulling, dragging, and hitting K.K. in her chest. K.K. walked upstairs to the door and opened the door. Once inside the home, King testified that she locked the door behind K.K. because Parke was trying to get into the home.

{¶ 11} K.K. asked King for her phone and called 911. The police arrived at the babysitter's home, and K.K. told them what happened. The police asked K.K. if she needed to go to the hospital, and she stated yes. The ambulance came to the home and transported K.K. to the hospital. At the hospital, K.K. was given a rape kit, and the detective took pictures of K.K.'s injuries to her face, neck, arms, and legs.

{¶ 12} Parke was indicted in a five-count indictment for rape, kidnapping, domestic violence, disrupting public services, and aggravated menacing. One- and three-year firearm specifications were attached to the rape and kidnapping counts. Parke was found guilty of the five counts, but not guilty of all firearm specifications. Parke was sentenced to six to nine years' imprisonment and filed this timely appeal, assigning three errors for our review:

I. Parke's convictions were against the manifest weight of the evidence;

II. Parke's conviction on Count 4, alleging disruption of public services, in violation of R.C. 2909.04(A)(3), was obtained upon insufficient evidence; and

III. The sentence of the trial court imposing an indefinite term of incarceration pursuant to the Reagan Tokes Act is unconstitutional.

## III. Manifest Weight of the Evidence

### A. Standard of Review

{¶ 13} "The manifest-weight-of-the-evidence standard concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support

one side of the issue rather than the other.'" *State v. Walker*, 8th Dist. Cuyahoga No. 111656, 2023-Ohio-810, ¶ 17, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A reviewing court

> "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered."

*Id.*, citing *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the trier of fact." *Id.*, citing *Eastley* at ¶ 21.

## B. Law and Analysis

{¶ 14} In Parke's first assignment of error, he argues that his convictions were against the manifest weight of the evidence. Parke alleges that K.K.'s testimony was inconsistent, specifically that K.K. did not tell the police dispatch she had been sexually assaulted during the 911 call. Parke also states that K.K.'s description of the sexual assault changed and that her description of the firearm Parke brandished also changed. Parke further argues that King's testimony was inconsistent with K.K.'s testimony, because K.K. never testified that Parke pulled, dragged, or hit her in the chest while in King's driveway.

**{¶ 15}** "[A] defendant is not entitled to reversal on manifest weight grounds merely because certain aspects of a witness' testimony are inconsistent or contradictory." *State v. Flores-Santiago*, 8th Dist. Cuyahoga No. 108458, 2020-Ohio-1274, ¶ 40. *See, e.g.*, *State v. Nitsche*, 2016-Ohio-3170, 66 N.E.3d 135, ¶ 45 (8th Dist.); *see also State v. Wade*, 8th Dist. Cuyahoga No. 90029, 2008-Ohio-4574, ¶ 38 ("A conviction is not against the manifest weight of the evidence solely because the [factfinder] heard inconsistent testimony."), *State v. Mann*, 10th Dist. Franklin No. 10AP-1131, 2011-Ohio-5286, ¶ 37 ("'While [a factfinder] may take note of the inconsistencies and resolve or discount them accordingly, * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence.'").

**{¶ 16}** "It is well settled, however, that the credibility of witnesses is a matter for the trier of fact to determine." *State v. Miller*, 5th Dist. Licking No. 2019-CA-00022, 2019-Ohio-5024, ¶ 21. "Challenges to the sufficiency of the evidence based upon instances of inconsistent testimony, memory defects, and the like are witness credibility issues which are properly resolved by the trier of fact." *State v. Nichols*, 5th Dist. Richland No. 12-CA-102, 2013-Ohio-3898, ¶ 13.

> Although we consider the credibility of witnesses in a manifest weight challenge, we are mindful that the determination regarding witness credibility rests primarily with the trier of fact because the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections — observations that are critical to determining a witness's credibility.

*State v. Jackson*, 8th Dist. Cuyahoga No. 100125, 2014-Ohio-3583, ¶ 37, citing *State v. Clark*, 8th Dist. Cuyahoga No. 94050, 2010-Ohio-4354, ¶ 17.

{¶ 17} The trier of fact is free to accept or reject any or all the testimony of any witness. *Id.*, citing *State v. Smith*, 8th Dist. Cuyahoga No. 93593, 2010-Ohio-4006, ¶ 16.

{¶ 18} K.K.'s failure to disclose that she was raped to the police dispatcher does not demonstrate that her testimony was inconsistent. K.K. testified that she did not tell the dispatcher about the rape because "it was a touchy thing to say over the phone." (Tr. 381.) Instead, K.K. decided to wait until the police arrived. Also K.K.'s description of the rape when she was in the hospital did not differ from her initial testimony to the police. However, K.K. did not tell the detective that Parke asked her for oral sex. When cross-examined about this alleged discrepancy, K.K. stated, "Cause oral sex is a part of sex. I mean, I wasn't being detailed about the sex. But, I mean, that's sex; right? I mean, I didn't — It was sex." (Tr. 392.)

{¶ 19} Parke also argues that K.K.'s testimony about the firearm was inconsistent. However, K.K. explained her confusion and stated, "I thought that he [the police] was asking like where did he [Parke] buy it from, or get the gun from." I didn't know that he was asking where in the room did he get it from. You just asked me where did he get it from." (Tr. 396.) This does not demonstrate that K.K.'s testimony was inconsistent or contradictory, but rather she did not understand the officer's question.

{¶ 20} Next, Parke contends that King's testimony should be completely dismissed because she testified that she observed Parke physically assaulting K.K. in King's driveway, and K.K. did not mention this in her testimony. Again, this does not demonstrate that the testimonies were inconsistent or contradictory. K.K. did not state that the physical assault did not happen. This testimony regarding Parke's assault on K.K. at King's home is based on King's recollection.

{¶ 21} At the end of the trial, the jury found Parke guilty of all counts, but not guilty of the firearm specifications. The jury's verdict demonstrates that it considered all the evidence, weighed the testimony of all the witnesses, and discounted or accepted testimony where the jury determined was appropriate. Accordingly, based on the record before us, we cannot say that this is the exceptional case where the jury clearly lost its way in finding Parke guilty.

{¶ 22} Therefore, Parke's first assignment of error is overruled.

## IV. Sufficiency of the Evidence

### A. Standard of Review

{¶ 23} "'An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Bradley*, 8th Dist. Cuyahoga No. 108983, 2020-Ohio-3460, ¶ 6, quoting *State v. Driggins*, 8th

Dist. Cuyahoga No. 98073, 2012-Ohio-5287, ¶ 101, citing *Thompkins*, 78 Ohio St.3d at 386, 678 N.E.2d 541 (1997).

{¶ 24} "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*. at ¶ 7, citing *State v. Vickers*, 8th Dist. Cuyahoga No. 97365, 2013-Ohio-1337, citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).

**B. Law and Analysis**

{¶ 25} In Parke's second assignment of error, he contends there was insufficient evidence to convict him of disruption of public services in violation of R.C. 2909.04(A)(3) because he did not purposely keep K.K. from calling 911. Parke argues that he did not know that K.K. called 911 when he hung up the phone and took it from her.

{¶ 26} R.C. 2909.04(A)(3) states:

No person, purposely by any means or knowingly by damaging or tampering with any property, shall do any of the following: Substantially impair the ability of law enforcement officers, firefighters, rescue personnel, emergency medical services personnel, or emergency facility personnel to respond to an emergency or to protect and preserve any person or property from serious physical harm.

{¶ 27} "'[T]he deciding factor in these cases is whether the defendant's conduct caused the victim to be unable to use that telephone.'" *State v. Tajblik*, 6th Dist. Wood No. WD-14-064, 2016-Ohio-977, ¶ 13, quoting *State v. Hill*, 7th Dist.

Mahoning No. 09MO3, 2010-Ohio-4871, ¶ 25.  In *State v. Galindo*, 5th Dist. Stark No. 2011CA00258, 2012-Ohio-3626, ¶17, the court held that "[t]he statute is aimed at conduct which prevents a victim from using public services to seek emergency assistance." *Id.*

{¶ 28} K.K. testified that Parke discovered that she was following a male friend and told her to call the male friend to tell him that K.K. would not talk with him anymore.  Parke handed the phone to K.K., and K.K. dialed 911.  Parke snatched the phone out of K.K.'s hand and hung up the phone.  According to K.K., the police called back and left a voicemail.  K.K. also testified that after Parke dragged her back into the home, once they were back upstairs, Parke pulled a gun out of a red container and told her "if the police come, I'm gonna hurt you." (Tr. 359.)  By taking K.K.'s phone, it demonstrates that Parke purposely prevented K.K. from using her cell phone.

{¶ 29} Therefore, Parke's second assignment of error is overruled.

V.      **Reagan Tokes Law**

{¶ 30} In Parke's third assignment of error, he argues that the trial court's imposing an indefinite term pursuant to Reagan Tokes Law is unconstitutional because it violates his Sixth Amendment right to a trial by jury.

{¶ 31} Parke's assignment of error is overruled pursuant to this court's en banc decision in *State v. Delvallie*, 2022-Ohio-470, 185 N.E.3d 536 (8th Dist.).

{¶ 32} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, ADMINISTRATIVE JUDGE

KATHLEEN ANN KEOUGH, J., and
EMANUELLA D. GROVES, J., CONCUR

N.B. Administrative Judge Anita Laster Mays is constrained to apply *Delvallie's* en banc decision. For a full explanation of her analysis, *see State v. Delvallie*, 2022-Ohio-470, 185 N.E.3d 536 (8th Dist.) (Laster Mays, J., concurring in part and dissenting in part).

Judge Emanuella D. Groves concurred with the opinions of Judge Lisa B. Forbes (dissenting) and Administrative Judge Anita Laster Mays (concurring in part and dissenting in part) in *Delvallie* and would have found the Reagan Tokes Law unconstitutional.