[Cite as *State v. Bey*, 2025-Ohio-740.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                     No. 113839

    v.                           :

JESUS BEY,                              :

    Defendant-Appellant.         :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART,
                  AND REMANDED
**RELEASED AND JOURNALIZED:** March 6, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-679396-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Glen Ramdhan and Carla Neuhauser,
Assistant Prosecuting Attorneys, *for appellee.*

Friedman, Nemecek, Long & Grant, L.L.C., and Eric C.
Nemecek, *for appellant.*

MICHAEL JOHN RYAN, J.:

{¶ 1} Defendant-appellant Jesus Bey ("appellant") appeals his convictions stemming from the sexual assault of a family friend. For the reasons that follow, we affirm in part, reverse in part, and remand. Appellant's convictions are affirmed, but because the trial court erred in failing to merge his kidnapping and rape convictions, the case is remanded to the trial court for the State to elect which offense to proceed on and for limited resentencing after merger.

**Procedural History and Facts**

{¶ 2} In March 2023, appellant was charged in a seven-count indictment with Counts 1– 6 rape, in violation of R.C. 2907.02(A)(2), felonies of the first degree with notices of prior conviction (R.C. 2929.13(F)(6), repeat violent offender specifications (R.C. 2941.149(A) and sexually violent predator specifications (R.C. 2941.148(A); Count 7, kidnapping, in violation of R.C. 2905.01(A)(4), a felony of the first degree, with a sexual motivation specification (R.C. 2941.147(A). The matter proceeded to a trial by jury; the notices of prior conviction and specifications were tried to the bench.

{¶ 3} The following pertinent evidence was presented at trial.

{¶ 4} The victim, "A.W.," had a close relationship with appellant; he was her godfather, and she considered him to be like a "father figure." On March 4, 2023, she went to visit appellant at his Solon, Ohio residence. A.W. testified that she sat at the dining room table to eat food she had just purchased. At this time, appellant was on the phone with two women having a sexually explicit conversation.

{¶ 5} While A.W. was eating, appellant showed her a pornographic video on his cell phone that he had recorded with another woman. He then exposed himself and asked A.W. to expose herself. She declined.

{¶ 6} A.W. developed heartburn, and appellant recommended medicine for her. A.W. had never taken heartburn medicine and asked to read the pill box. She went to appellant's bedroom where the pill box was located. According to A.W., appellant came up behind her and started to struggle with her, trying to pull her pants down. During the struggle, A.W. told appellant that she needed to leave and pick up her friend — a lie A.W. admitted to telling because, "I was scared and I didn't know what was going on or what was about to happen." As appellant was pulling down A.W.'s pants, he told her "it's going to be okay." A.W. testified that on a scale from 1 to 10, the level of force that appellant was using during the struggle was a 10.

{¶ 7} After appellant removed A.W.'s clothing, he forced her to have vaginal intercourse. He then forced her to have anal intercourse. During the assault, A.W. felt unable to leave and kept telling appellant, "No." Appellant continued to forcibly rape A.W., including repeated bouts of vaginal intercourse. He also inserted a silver sex toy in her anus. Appellant attempted to kiss A.W. and tried to force her to perform oral sex on him. A.W. refused, and appellant proceeded to ejaculate on A.W. After the assault, appellant told A.W. to get a rag from the bathroom to wipe herself off. A.W. testified that she acted normal because she was afraid she would not be able to leave the house if she reacted differently. A.W. called a friend and left appellant's residence.

{¶ 8} A.W. contacted her aunt. The aunt testified that she could instantly tell that something was wrong based on A.W.'s "hesitant" and "fearful" tone. The aunt described A.W. as being "in a state of shock." The aunt told A.W. go to the hospital for a rape kit. The aunt met A.W. at the hospital and observed that she was not acting like her normal self.

{¶ 9} The aunt testified that A.W. was usually a happy person but since the assault, A.W. has had changes in her mood and demeanor. According to the aunt, the changes she observed in her niece were that she was easily agitated, not as easygoing as she used to be, and paranoid. A.W.'s mother testified and confirmed the same change in A.W.'s demeanor.

{¶ 10} Heather Tripp ("Tripp"), a specially trained sexual assault nurse examiner ("SANE"), treated A.W. Tripp testified as to her training and experience as a SANE nurse. Tripp testified she obtained a narrative from A.W. that included everything that happened leading up to A.W.'s hospital visit. Tripp explained that the narrative is obtained to assist her in determining a medical diagnosis and providing treatment to her patient.

{¶ 11} Tripp conducted a physical exam where she took swabs of pertinent areas of A.W.'s body and noted no visible injuries. Tripp testified that, based on her training and experience, it was not unusual for a victim of sexual assault to present with no physical injuries and that a majority of the sexual assault patients she has treated do not have visible injuries. Tripp further explained that a hospital's emergency department is really the only place where medical services for rape

victims can be offered and based upon her training and experience and the number of patients she has seen, it is not unusual for a patient to lack injuries.

{¶ 12} Tripp stated that the reason visible injuries are not often seen on victims of sexual assault during examinations is due to the elasticity of the vagina and buttocks as well as the lapse of time between an assault and the victim's visit to the hospital. Tripp testified the patients disclose sexual assault in varying ways and varying time frames and it was not uncommon for victims to delay reporting and treatment. Tripp explained that victims' memories are often fragmented and they might remember things in flashes or in a non-linear way.

{¶ 13} Solon Police Lieutenant Roy Cunningham learned of the alleged assault on the evening of March 4, 2023, and secured a warrant to search appellant's house. The warrant was executed on March 5, 2023. Officers took photographs of appellant's bedroom and collected evidence, including the rag, the silver object thought to be used during the assault, and appellant's bedding.

{¶ 14} The rape kit was forwarded to the Ohio Bureau of Criminal Investigations ("BCI") for further analysis and for comparison to appellant's DNA standard. At trial, BCI Analyst Angela Khrestian ("Khrestian") testified that the swab from A.W.'s vagina was a DNA mixture of two contributors that was consistent with both A.W. and appellant.

{¶ 15} Detective Linda Castro, the lead detective on the case, testified that based on her specialized training and experience, it is not uncommon for rape victims to present with no physical injuries. According to Detective Castro, in her

12 years in law enforcement, she had never had a victim fight back and be physically injured from a rape.

{¶ 16} The jury convicted appellant on Counts 1, 3, 4, and 7 and an amended Count 6 (attempted rape). The jury convicted appellant of the sexual motivation specification attendant to Count 7, and the trial court convicted appellant of all other notices of prior conviction and specifications, including the sexually violent predator specification. The court found that none of the offenses merged for purposes of sentencing, sentenced appellant to an aggregate sentence of life in prison with parole eligibility after 42 years, and classified him as a Tier III sex offender.

{¶ 17} This appeal follows.

## Assignments of Error

I. The trial court erred by allowing the State to elicit improper expert testimony in violation of the Ohio rules of evidence as well as Bey's constitutional right to due process of law and a fair trial as guaranteed by the United States and Ohio Constitutions.

II. The trial court erred by permitting Detective Castro to testify concerning Bey's medical records, thereby depriving Bey of his constitutional right to due process of law and a fair trial.

III. Bey's convictions are against the manifest weight of the evidence.

IV. The trial court's determination that Bey was a sexually violent predator was not supported by sufficient evidence and/or was against the manifest weight of the evidence.

V. The trial court erred by limiting the scope of cross-examination and prohibiting defense counsel from introducing evidence concerning [the victim].

VI. The trial court erred and violated Bey's rights pursuant to the double jeopardy clause of the United States Constitution and Article

Section 10 of the Ohio Constitution when it failed to merge the kidnapping conviction with the underlying sex offenses.

**Law and Analysis**

## A. Witness Testimony

{¶ 18} In the first assignment of error, appellant contends that the trial court erred by allowing the State to elicit improper "expert" testimony. Appellant contends that the State elicited improper testimony at trial from nurse Tripp and Detective Castro. Regarding Tripp's testimony, appellant argues that her testimony concerning sexual assault victim trauma responses, disclosure, and physical injuries was improper. With respect to Detective Castro's testimony, appellant specifically contends that her testimony regarding delayed disclosure for victims of sexual assault and the commonality of physical injuries appearing on such victims was outside the scope of lay witness testimony.

{¶ 19} Ohio Evid.R. 701 provides that a lay witness is permitted to elicit opinion testimony limited to such that is "(1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." This court has long recognized that a lay witness can testify "under Evid. 701 when . . . the testimony is based on the witness's training or experience." *State v. Haynik*, 2015-Ohio-717, ¶ 49 (8th Dist.).

### 1. Nurse Tripp

{¶ 20} Appellant contends that Nurse Tripp testified as an expert even though she was never qualified as an expert during trial. Appellant did not object to

Nurse Tripp's testimony during trial; therefore, he waived all but plain error. Crim.R. 52(B).[1] "To constitute plain error, there must be (1) an error, i.e., a deviation from a legal rule, (2) that is plain or obvious, and (3) that affected substantial rights, i.e., affected the outcome of the trial." *State v. Pratts*, 2016-Ohio-8053, ¶ 34 (8th Dist.), citing *State v. Barnes*, 2002-Ohio-68. To show plain error, the accused is "required to demonstrate a reasonable probability that the error resulted in prejudice — the same deferential standard for reviewing ineffective assistance of counsel claims." *State v. Rogers*, 2015-Ohio-2459, ¶ 22, citing *United States v. Dominguez Benitez*, 542 U.S. 74 (2004). Moreover, even if the plain-error standard is met, courts should only notice it "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 21} Appellant relies on *State v. Carswell*, 2021-Ohio-3379 (6th Dist.), a case from the Sixth Appellate District wherein the court found that a SANE nurse's testimony about the likelihood of finding physical evidence of a sexual assault through photographs or trauma to the vaginal or anal area "was clearly related to matters beyond the knowledge or experience possessed by lay persons." *Id.* at ¶ 56. The court found that, based on the record in the case, the nurse "was properly qualified as an expert," and proceeded to review the admission of the nurse's expert

---

[1] During oral argument, counsel for appellant suggested that trial counsel did in fact object to the line of questioning. A review of the transcript reveals that defense counsel's sole objection was when the prosecutor asked Tripp what kind of training she had in trauma response. Defense counsel never objected to Tripp's testimony as a lay witness; therefore, our review is for plain error.

testimony. *Id.* at ¶ 55. The court also found that Crim.R. 16(K) had been violated. *Id.* at ¶ 60. Notwithstanding those findings, the court concluded that any error in the admission of the nurse's testimony was harmless error. *Id.* at ¶ 63.

{¶ 22} To counter appellant's argument, the State relies on two cases from this district: *State v. Belle*, 2019-Ohio-797 (8th Dist.), and *State v. Bright*, 2024-Ohio-2803 (8th Dist.).

{¶ 23} In *Belle*, the appellant argued that the SANE nurse testified as an expert regarding the effect of trauma on a victim's memory without being qualified as an expert. *Id.* at ¶ 39. This court disagreed, noting that before asking her questions about trauma and memory, the prosecutor elicited information about the nurse's training and experience regarding the "neurobiology of trauma," the effect of trauma on the brain, and how the nurse had seen trauma manifest in sexual-assault victims. *Id.* at ¶ 40-41. This court concluded that the SANE nurse's testimony was permissible lay-witness testimony because "[t]he State had laid a foundation demonstrating that she had a sufficient amount of experience and training and her testimony . . . was based on her personal knowledge and experience." *Id.* at ¶ 48.

{¶ 24} Likewise, in *Bright*, the appellant argued that the SANE nurse testified as an expert even though she was never qualified as one regarding the manner in which child sexual-assault victims disclose information regarding their incidents. *Id.* at ¶ 18. This court found that such testimony was permissible because the State laid the proper foundation demonstrating the nurse had adequate training

and experience to elicit the opinion testimony in question.  *Id*. at ¶ 25.  This court noted that the State laid a foundation by questioning the nurse about her current employment, her 12 years working as a SANE nurse, and her history of conducting forensic exams.  *Id*. at ¶ 24.  This court determined the SANE nurse's testimony was proper because it was based on her personal knowledge.  *Id*. at ¶25.

{¶ 25} We find that this case is analogous to *Belle,* 2019-Ohio-797 (8th Dist.), and *Bright,* 2024-Ohio-2803 (8th Dist.).  The State questioned nurse Tripp regarding her training and experience.  Tripp testified that she became a SANE nurse in 2016 after completing her bachelor's degree in nursing and a "forty-hour didactic course followed by a three-month preceptorship."  Tripp testified that she is employed with Cleveland Clinic and, as a SANE nurse, she conducts patient-led examinations of victims of sexual violence and other forms of abuse.

{¶ 26} The State questioned nurse Tripp regarding how victims respond to traumatic events.  Tripp testified generally that because of the adrenaline released during traumatic events, all victims react differently.  The State asked Tripp whether it was unusual that A.W. did not present with any visible injuries following the assault.  Tripp testified that not having visible injuries after a sexual assault was not unusual given that such injuries are not common due to the elasticity of the vagina and buttocks as well as the time period between the assault and obtaining a SANE examination.  Finally, Tripp explained that, based on her training and experience, when and how much a victim reports often depends on the circumstances in which

their assault occurred — for example, if the victim knew who assaulted them, if the victim can remember the assault, or if someone told them to make a report.

{¶ 27} We find that the State laid the appropriate foundation that then allowed nurse Tripp to testify based on her training and experience as contemplated by Evid.R. 701. The State's questions showed that Tripp had the appropriate training to obtain the position as a SANE nurse and ample experience conducting SANE examinations on victims of sexual assault. This training, experience, and personal knowledge working with sexual abuse victims was sufficient to allow Tripp to testify to her opinion on how victims present after a traumatic abuse-related experience, a victim's lack of physical injuries, and circumstances generally surrounding assault victims' reporting and disclosing their assault. We note, also, that much of nurse Tripp's testimony was general in nature, did not pertain to the victim in this case, and did not opine on A.W.'s credibility. Therefore, the trial court did not commit plain error by allowing the testimony. Moreover, even if appellant had not waived his argument, we find no error in the admission of Tripp's testimony as a lay witness, plain or otherwise.

### 2. Detective Castro

{¶ 28} Appellant argues that Detective Castro improperly testified as an expert witness and directs this court to decisions from other Ohio appellate districts where the court decided that police officer testimony concerning delayed disclosure and reporting of sexual abuse was found to be beyond the knowledge and experience of lay persons. Appellant cites no supporting cases from our district.

{¶ 29} To support its position that the detective's testimony was properly admitted, the State relies on *State v. Jones*, 2015-Ohio-4116 (2d Dist.), which has been cited with approval by this district, and *State v. Haynik*, 2023-Ohio-717 (8th Dist.).

{¶ 30} In *Haynick*, the appellant argued that a testifying police sergeant testified as an expert regarding the commonality of injuries to genitalia after sexual assault even though he was never qualified as an expert. *Id.* at ¶ 45. This court found that the State laid a proper foundation regarding the sergeant's training and experience and that such "training and experience in sexual assault cases was helpful to determine a fact at issue regarding whether sexual assault victims always sustain injuries to their genitalia." *Id.* at ¶ 51. This court noted that where a law enforcement officer testifies as a lay witness to opinions based on his or her experience as a police officer, previous investigations, and his or her perception of evidence at issue, it satisfies as lay testimony based off training and experience. Id., citing *State v. Harris*, 2020-Ohio-4461 (8th Dist.).

{¶ 31} In *Jones*, the appellant argued that the detective testified as an expert regarding disclosure from child abuse victims even though he had not been qualified as an expert. *Id.* at ¶ 110. The Second Appellate District disagreed, stating that the State laid the proper foundation regarding the detective's training and experience, which included the officer's 13 years of experience as a special victim's detective, forensic interview training, and participation in approximately 500 interviews of child abuse victims. *Id.* at ¶ 111. *See also State v. Marshall*, 2022-Ohio-2626, ¶ 22

(8th Dist.), and *State v. Peterson*, 2015-Ohio-2903, ¶ 31 (8th Dist.) (both cases citing Jones with approval).

{¶ 32} Appellant contends that Detective Castro's testimony about conducting interviews after processing trauma and the commonality of physical injuries in sexual abuse cases was improper expert testimony. We disagree and find that the detective's testimony was permissible lay-witness testimony because the State laid a foundation demonstrating that the detective had sufficient experience and training and her testimony was based on her personal knowledge and experience.

{¶ 33} Detective Castro testified that she became a police officer in 2012 after attending the police academy and completing her field training with the Solon Police Department. Detective Castro was promoted to detective in 2020 after completing specialized training. Detective Castro testified that throughout the course of her career she has been trained on how to interact with victims of sexual assault and has worked with approximately 50 victims. Detective Castro also testified within her experience that she rarely comes into contact with a rape victim who fought back and therefore lack of physical injuries is common. The statements appellant challenges were lay witness opinion testimony solely based on Castro's training and experience. Therefore, Detective Castro did not need to be qualified as an expert witness and her testimony was properly admitted.

{¶ 34} Next, appellant argues that the State violated Crim.R. 16(K), which governs expert reports, because it failed to provide said reports prior to trial. But

because both Tripp and Castro testified as lay witnesses and because we find that there was no improper testimony, it follows that there was no violation of Crim.R. 16(K).

{¶ 35} Finally, appellant argues that Tripp's and Castro's testimonies improperly bolstered the victim's testimony. Specifically, appellant contends that was improper for Detective Castro and Tripp to identify common attributes of sexual assault victims that they had observed throughout their careers (delayed reporting, lack of injuries, demeanor, etc.) and then testify that A.W. exhibited those same characteristics. We disagree. There is a distinction between direct opinion testimony about a victim's veracity, i.e. that Tripp and Castro believed A.W., and indirect bolstering of a victim's credibility. Neither Tripp nor Castro opined whether they thought A.W. was telling the truth about the sexual assault. *See State v. Bouyer*, 2023-Ohio-4793, ¶ 87 (noting that while opinion testimony regarding another witness's credibility is inadmissible, indirect bolstering of a victim's credibility is different from the direct rendering of an opinion as to a victim's veracity.) Their testimony was to explain why a lack of physical injuries, a victim's demeanor, or delayed reporting did not rule out that a sexual assault had occurred.

{¶ 36} Finally, even if we were to find that Tripp's and Castro's testimonies were improper, we would conclude that appellant was not deprived of a fair trial due to the witnesses' testimonies. Appellant contends that the only direct evidence in this case is A.W.'s testimony. It is well-settled, however, that a victim's testimony alone is sufficient to support a rape conviction. *State v. O'Boyle*, 2024-Ohio-5480,

¶ 26 (8th Dist.), citing *State v. Smith*, 2023-Ohio-1670, ¶ 20 (8th Dist.); *State v. Blankenship*, 2001 Ohio App. LEXIS 5520, *11 (8th Dist. Dec. 13, 2001). "'There is no requirement that a rape victim's testimony be corroborated precedent to conviction.'" *O'Boyle* at *id.*, quoting *State v. Roan*, 2020-Ohio-5179, ¶ 21 (8th Dist.). Moreover, there was other direct evidence supporting the victim's testimony including appellant's DNA and the silver object used to facilitate the anal rape.

{¶ 37} The evidence against appellant was compelling, and there is little chance that, absent the challenged testimony, the result of his trial would have been different. Because A.W. testified, the jury was able to judge for themselves her appearance on the stand, manner of testifying, the reasonableness of her testimony, the accuracy of memory, frankness or lack of it, and any bias A.W. may have had. The jury could arrive at their own conclusion on whether they believed her testimony.

{¶ 38} Considering the above, the first assignment of error is overruled.

**B. Appellant's Medical Records**

{¶ 39} In the second assignment of error, appellant argues that the trial court erred in allowing Detective Castro to testify concerning appellant's medical records.

{¶ 40} During both A.W.'s and Castro's cross examinations, defense counsel elicited testimony that appellant was a victim of a shooting that occurred in August 2022. Part of the defense's theory was that appellant, who sustained multiple gunshot wounds in the shooting, could not have physically sexually assaulted A.W.

{¶ 41} During A.W.'s cross examination, defense counsel questioned A.W. extensively concerning the level of force exerted by appellant. Counsel then renewed the line of inquiry with Detective Castro, raising the issue of when appellant was shot and the extent and location of his injuries. Defense counsel then asked the detective if she had a copy of appellant's medical records.

{¶ 42} Defense counsel, having raised the issue of physical ability and the existence of medical records, stated at sidebar that it would be improper to question Castro without the medical records and noted that medical records were an exception to the hearsay rule. Defense counsel confirmed that the subject medical records had been provided in discovery and were necessary now that the door had been opened to appellant's physical condition.

{¶ 43} Prior to Castro's redirect examination, the State expressed its intention to question the detective about appellant's medical records. Defense counsel objected, arguing that they never introduced the medical records or asked questions about their contents beyond the fact that Castro had obtained them during the course of her investigation. The court overruled the objection. During redirect examination, the State asked Castro to read portions of the notes contained in the medical records.

{¶ 44} Appellant now argues that Castro's testimony, as well the admission of the redacted medical records, were more prejudicial than probative as the records had limited relevance to the case and impugned appellant's credibility by portraying him as a dishonest person.

{¶ 45} Appellant relies on *State v. Harris*, 2015-Ohio-166. Harris was charged with aggravated murder and related offenses stemming from a drug transaction. Harris initially filed a suggestion of incompetency to stand trial and a plea of not guilty by reason of insanity ("NGRI"). *Id.* at ¶ 4. As a result, the trial court ordered Harris to undergo a mental health examination with a clinical psychologist. *Id.* at ¶ 5. The results of the examination revealed that Harris was competent to stand trial and did not meet the criteria for NGRI. The psychologist further noted that Harris appeared to be malingering during the course of the examination and was going to testify to the same. *Id.* at ¶ 9 - 10.

{¶ 46} Prior to trial, Harris decided to abandon the NGRI plea and instead proceed with an alibi defense. During its case-in-chief, the State presented testimony from the psychologist who conducted the forensic examinations. Over defense counsel's objection, the psychologist testified that when she evaluated Harris, "he was malingering both cognitive and psychiatric difficulties" and was "feigning some symptoms and probably exaggerating others." *Id.* at ¶ 10.

{¶ 47} On appeal, Harris argued that the trial court erred by permitting the State to introduce testimony and evidence concerning his mental health evaluation. The Ohio Supreme Court reversed Harris's convictions, reasoning that the improper admission of the evidence unfairly prejudiced Harris's right to due process of law and a fair trial. As the Court explained, the psychologist's "testimony regarding Harris's feigning of mental illness was an opinion as to Harris's credibility," a role expressly reserved for the trier of fact. *Id.* at ¶ 39. The Court further noted that the

psychologist's opinion that Harris lacked veracity "would have caused a reasonable juror to judge Harris harshly." *Id.*

{¶ 48} *Harris* is easily distinguishable. In the case before us, appellant's trial counsel opened the door to testimony concerning appellant's physical condition. Counsel argued that medical records needed to be produced and questioned Detective Castro about the records. The certified medical records were provided to defense counsel well in advance of trial, jointly redacted, and were acknowledged by defense counsel to fall within the business records exception to hearsay.

{¶ 49} To the extent that appellant complains that the statements made by treating professionals in observing his performance in the treatment room and contrasting it with his gait as he returned to his car were improperly admitted, the statements contained objective observations relevant to treatment and progress. The medical records did not improperly comment on appellant's truthfulness. Finally, we note that defense counsel expressly stipulated to the admission of the records.

{¶ 50} Accordingly, the second assignment of error is overruled.

### C. Manifest Weight of the Evidence

{¶ 51} In the third assignment of error, appellant argues that his convictions were against the manifest weight of the evidence.

{¶ 52} A manifest-weight challenge attacks the credibility of the evidence presented and questions whether the State met its burden of persuasion at trial. *See State v. Whitsett*, 2014-Ohio-4933, ¶ 26 (8th Dist.), citing *State v. Thompkins*, 78

Ohio St.3d 380, 387 (1997). When considering an appellant's claim that a conviction is against the manifest weight of the evidence, the court of appeals sits as a "'thirteenth juror'" and may disagree with "the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). The reviewing court must examine the entire record, weigh the evidence and all reasonable inferences, consider the witness's credibility and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at *id.*, citing *State v. Martin*, 20 Ohio App.3d 172 (1st Dist.1983). Reversal on manifest weight grounds is reserved for the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *Martin* at 175.

{¶ 53} Appellant contends that his convictions were against the manifest weight of the evidence because there were multiple inconsistencies in A.W.'s testimony and she was thus not a credible witness. Appellant points out contradictions in witness testimony, namely that the version of events A.W. testified to were inconsistent with her friend's testimony and A.W.'s actions before and after the assault were inconsistent with someone who did not want to engage in sexual conduct. Appellant points out that A.W. invited herself to appellant's house and decided to stay at the house even after appellant engaged in a sexually explicit phone call, showed her pornography, exposed himself, and asked A.W. to expose herself. He also points out that A.W. suffered no physical injuries.

{¶ 54} Appellant's attempt to blame the victim is not well founded. It was not A.W. who engaged in the phone call, displayed pornography, or exposed herself — it was the appellant who committed these actions prior to raping A.W. A.W. explained how she was surprised and scared by appellant's prelude to the assault and continued to be fearful after the assault, lying to appellant in order to leave his house. Additionally, both Tripp and Castro testified that it was common for victims of sexual assault to present no visible physical injuries and that sexual assault victims have various responses to trauma.

{¶ 55} "'[A] defendant is not entitled to reversal on manifest weight grounds merely because certain aspects of a witness' testimony are inconsistent or contradictory.'" *State v. Register*, 2025-Ohio-106, ¶ 32, quoting *State v. Parke*, 2023-Ohio-1144, ¶ 15 (8th Dist.). It is well-settled that the credibility of witnesses is a matter for the trier of fact to determine. *Register* at ¶ 33, citing *Parke* at ¶ 16. Although we consider the credibility of witnesses in a manifest weight challenge, we are mindful that the determination regarding witness credibility rests primarily with the trier of fact because the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections — observations that are critical to determining a witness's credibility. *Parke* at *id.*, quoting *State v. Jackson*, 2014-Ohio-3583, ¶ 37 (8th Dist.). "The trier of fact is free to accept or reject any or all the testimony of any witness." *Id.* at ¶ 17, citing *State v. Smith*, 2010-Ohio-4006, ¶ 16 (8th Dist.). Here, the jury heard all of the evidence and believed the State's version of the facts over appellant's. After reviewing the entire record, we cannot

say that the jury lost its way in convicting appellant nor is this the exceptional case that warrants a new trial.

{¶ 56} The third assignment of error is overruled.

**D. Sexually Violent Predator Specification**

{¶ 57} In the fourth assignment of error, appellant argues that the trial court's finding that he is a sexually violent predator was not supported by sufficient evidence and was against the manifest weight of the evidence.

{¶ 58} In contrast to the manifest weight of the evidence, when reviewing sufficiency of the evidence, an appellate court must determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 2004-Ohio-6235, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. The court examines all the evidence admitted at trial to determine whether such evidence, if believed, would convince a reasonable factfinder of the defendant's guilt beyond a reasonable doubt. *State v. Williams*, 2023-Ohio-2296, ¶ 81 (8th Dist.), citing *Thompkins*, 78 Ohio St.3d 380. Whether the evidence is legally sufficient to support a verdict is a question of law. *Thompkins* at 386.

{¶ 59} A sexually violent predator is defined as a person who "commits a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses." *State v. Kelley*, 2024-Ohio-157, ¶ 81 (8th Dist.), citing R.C. 2971.01(H)(1). When tasked with determining whether a defendant is a

sexually violent predator, the trier of fact is to consider the factors listed in R.C. 2971.01(H)(2)(c); however, there is no requirement that all factors be proven. *Kelley* at *id.* "Instead, any of the factors may be considered as evidence that an individual is likely to engage in one or more sexually violent offenses." *State v. Bates*, 2024-Ohio-2909, ¶ 65 (8th Dist.), citing *State v. Woods*, 2024-Ohio-954 (8th Dist.). The R.C. 2971.01(H)(2) list of factors that the trier of fact may consider in determining whether an offender is likely to engage in the future in one or more sexually violent offenses includes:

> For purposes of division (H)(1) of this section, any of the following factors may be considered as evidence tending to indicate that there is a likelihood that the person will engage in the future in one or more sexually violent offenses:
>
> (a) The person has been convicted two or more times, in separate criminal actions, of a sexually oriented offense or a child-victim oriented offense. For purposes of this division, convictions that result from or are connected with the same act or result from offenses committed at the same time are one conviction, and a conviction set aside pursuant to law is not a conviction.
>
> (b) The person has a documented history from childhood, into the juvenile developmental years, that exhibits sexually deviant behavior.
>
> (c) Available information or evidence suggests that the person chronically commits offenses with a sexual motivation.
>
> (d) The person has committed one or more offenses in which the person has tortured or engaged in ritualistic acts with one or more victims.
>
> (e) The person has committed one or more offenses in which one or more victims were physically harmed to the degree that the particular victim's life was in jeopardy.
>
> (f) Any other relevant evidence.

R.C. 2971.01 (H)(2)(a)-(f).

{¶ 60} Thus, the list of factors the trier of fact may consider includes an examination of "[a]ny other relevant evidence," including the current indictment. *See Kelley* at ¶ 65; R.C. 2971.01(H)(2)(f).

{¶ 61} During trial — but outside of the presence of the jury — the State elicited testimony regarding prior sex offense allegations against appellant. During the sentencing phase of the trial, the State presented the testimony of University Hospital's Police Department Lieutenant David Bartee, formerly a Cleveland Height's police detective. Lieutenant Bartee testified that on January 12, 2014, when he was working for Cleveland Heights, a report came in of a sexual assault involving appellant. The victim reported that she was at appellant's house after a night of drinking and fell asleep. The victim woke up and "her underwear was pulled down to her ankles and the dress was ripped." The victim also sustained bruising to her arm. The victim went to Euclid Hospital where a rape kit was performed. The rape kit was a match for appellant, e.g., appellant's DNA was present. Appellant was charged with two counts of rape and one count of sexual battery. The appellant was found not guilty after a bench trial. *See State v. Bey*, Cuyahoga C.P. Case No. CR-14-585357-A ("2014 case").

{¶ 62} Detective Castro then testified. The detective testified that she spoke with the victim of the 2014 case on April 12, 2023. The victim recollected the events to the detective, stating that she went to appellant's house with a group of friends,

drank alcohol, went to sleep, woke up with her underwear around her ankles, and went to the hospital to have a SANE exam. She also related her feelings that appellant "was dangerous and that he threatened her and used other women to threaten her and that she was scared for the life of her twin sister." According to the victim, she knew appellant was in a gang and she was too scared to testify at his 2015 trial.[2]

{¶ 63} The trial court also discussed with Detective Castro other incidents involving appellant, noting that in the hours after raping and kidnapping A.W., he received oral sex from his girlfriend. The court stated that it was going to take into consideration "any other relevant sexually deviant behavior," which included having sex with his goddaughter and then oral sex with someone else "right after." The court noted that although the 2014 case did not result in a conviction, "it appears that there's been a pattern of different and unrelated women that either [appellant] or others have brought forth. So you've got his goddaughter which in and of itself is deviant behavior, you have the women from 2014, [and] the woman that was a charge in 2012."[3]

{¶ 64} After hearing all the evidence presented at trial and during the sentencing hearing, the trial court ruled appellant was a sexually violent predator.

---

[2] There was debate during the sentencing hearing whether the victim testified in the 2015 trial; defense counsel insisted she did testify.

[3] There appears to have been an allegation of rape made against appellant in 2012; the State told the court it was not presenting anything regarding that allegation.

One determining element the court relied on was the fact that appellant and the victim had a familial-type relationship:

> The sexual assault of a related known family member particularly in the family dynamic that they had all set up for each other through godparents and her taking care of his daughter, Mr. Bey's daughter, the victim taking care of Mr. Bey's daughter while he could not take care of her and even having text messages back and forth making sure that his daughter was fed, that type of dynamic indicates to me that Mr. Bey believes that he can engage in whatever sexually — sex conduct that he wants without consequence. It is particularly offending that it was his goddaughter.
>
> So therefore I am going to find that he is a — based upon everything today, his record, including everything that we've discussed today, everything that I heard at the sentencing — I mean, at the trial and everything today I'm going to find that he is a sexually violent predator.

{¶ 65} Appellant contends that there was insufficient evidence or that the finding was against the manifest weight of the evidence because appellant was found not guilty in the 2014 case and the trial court incorrectly relied on that case and other consensual sexual activity in appellant's past to conclude he was a sexually violent predator.

{¶ 66} In *State v. Rodriguez*, 2021-Ohio-2580, ¶ 18 (8th Dist.), the defendant was convicted in a jury trial of being a sexually violent predator.[4] In upholding the jury's conviction, this court noted that the trial of fact can consider "any other relevant evidence" found in the catchall provision

---

[4] The defendant in *Rodriguez* chose to try the sexually violent predator specification to the jury.

of R.C. 2971.01(H)(2)(f), which includes charges for which a defendant is found not guilty. *Id.* at ¶ 18-19.

{¶ 67} In *State v. Asadi-Ousley*, 2017-Ohio-7252 (8th Dist.), this court affirmed the trial court's finding that the defendant was a sexually violent predator; although the current indictment was the first time the defendant was charged with a sexually oriented offense, the trial court could consider that the defendant had prior convictions for violent felonies. *Id.* at ¶ 27 – 28.

{¶ 68} In this case, the court heard evidence of appellant's prior convictions, which included findings of delinquency for felonious assault as a juvenile and convictions for felonious assault and weapons-related charges as an adult in state and federal courts. The court was aware that appellant was currently incarcerated in federal prison. On December 19, 2022, appellant admitted he had violated the conditions of his supervised release. On April 3, 2023, appellant was sentenced for 24 months in prison after violating the conditions of his parole. *See United States v. Bey*, 1:20CR306-1. The State pointed out that at the time appellant committed the rape and kidnapping in this case, he was on parole in his federal case, wearing an ankle monitor, and awaiting sentencing on his parole violations.

{¶ 69} We also find that the trial court could have considered, pursuant to R.C. 2971.01(H)(2)(e), that appellant has committed one or more offenses in which one or more victims were physically harmed to the degree that the particular victim's life was in jeopardy. In C.P. CR-13-579235-B, the appellant was convicted of felonious assault and having weapons while under disability for the October 16, 2013

shooting of a nightclub security guard. Specifically, appellant pleaded guilty to an amended indictment in the case, including pleading guilty to felonious assault, pursuant to R.C. 2903.11(A)(1), with a one-year firearm specification, admitting he knowingly caused serious physical harm to the victim and had a firearm on or about his person or under his control while committing the offense.[5]

{¶ 70} The court could also consider appellant's behavior after the rape. *See State v. Campbell*, 2018-Ohio-1639, ¶ 18 (trial court's finding that defendant was a sexually violent predator was not against the manifest weight of the evidence when the trial court relied on defendant's behavior following the rape). Here, the court considered that appellant engaged in sexual activity with a girlfriend in the hours after he raped A.W. Although there is no indication that the sexual activity with the girlfriend was anything but consensual, the court found that appellant's sexual activity in the hours after the rape was evidence of his deviant behavior.

{¶ 71} Finally, the court could consider appellant's lack of remorse. The trial court ordered appellant to take part in a psychiatric evaluation and presentence investigation report but appellant refused to participate in either.

{¶ 72} In light of the above, the trial court's finding that appellant was a sexually violent predator was supported by sufficient evidence and was not against the manifest weight of the evidence.

{¶ 73} The fourth assignment of error is overruled.

---

[5] While the State did not discuss the particulars of the nightclub shooting case, it is common practice for appellate courts to take judicial notice of online dockets.

### E. Cross Examination – Rape Shield

{¶ 74} In the fifth assignment of error, appellant argues that the trial court erred in prohibiting defense counsel from introducing evidence about A.W. and limiting the scope of cross-examination.

{¶ 75} First, appellant contends that the trial court erred when it prohibited the introduction of A.W.'s Instagram live videos.

{¶ 76} Ohio's rape shield statute, R.C. 2907.02(D) prohibits the introduction of "any evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity." There is only one exception to this prohibition. Such evidence is admissible to show "evidence of origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh the probative value." *Id.*

{¶ 77} The rape shield statute was enacted to guard a victim's sexual privacy, to protect the victim from undue harassment, and to discourage the tendency in sexual assault cases to put the victim on trial. *State v. Gardner*, 59 Ohio St.2d 14, 17 (1979). The statute was enacted to protect the victims from being attacked so as not to discourage victims from reporting crimes of rape and sexual assault. *Id.* at 17 – 18. Trial courts have the discretion to determine the relevancy of evidence and apply the statute in a manner which best serves these underlying purposes. *State v. Leslie*, 14 Ohio App.3d 343, 346 (2d Dist. 1984). "The key to assessing the probative value

of the excluded evidence is its relevancy to the matters as proof of which it is offered. *Gardner* at ¶ 18.  The *Gardne*r Court noted that in many instances a rape victim's past sexual conduct may have no bearing at all on either the victim's credibility or the issue of consent.  *Id.*

{¶ 78} In analyzing whether evidence is admissible under the statute, a court must first determine whether the evidence pertains to origin of semen, pregnancy, or the victim's past sexual activity with the defendant.  R.C. 2907.02(D).  If it does, this court must then conduct a probative versus prejudicial analysis to determine the admissibility of the evidence.  *Id.*

{¶ 79} Prior to trial, the court addressed seven undated Instagram live videos allegedly produced by A.W.; the videos, taken together, lasted less than five minutes.

{¶ 80} In the videos, A.W. refers to social media comments from men, none of whom are the appellant.  The comments reference sexual activity or "body count" and penis size.  At no time did appellant establish the date the videos were created, nor did he provide any relevant connection to either the charges reflected in the indictment or another permissible use under the statute.

{¶ 81} During the aunt's cross-examination, defense counsel tried to again introduce the video clips, ostensibly to show that A.W. was not severely traumatized and did not act like a different person after the assault.  The trial court noted that such admission was prohibited because "we [all can] attest to what people put on social media is not . . . even close to what the reality is of their daily lives."

{¶ 82} Appellant argues that even if the statute prohibits introduction of the Instagram videos, excluding them violated his right to cross-examine witnesses. Evid.R. 611(B) states "[c]ross-examination shall be permitted on all relevant matters and matters affecting credibility." "'The limitation of . . . cross-examination lies within the sound discretion of the trial court, viewed in relation to the particular facts of the case. Such exercise of discretion will not be disturbed absent a clear showing of an abuse of discretion.'" *Mueller v. Lindes*, 2002-Ohio-5465, ¶ 24 (8th Dist.), quoting *State v. Treesh*, 90 Ohio St.3d 460, 479 (2001). Trial judges may impose reasonable limits on cross-examination to prevent harassment, prejudice, confusion of the issues, repetitive testimony, marginally relevant interrogation, or to protect a witness's safety. *La Spisa v. La Spisa*, 2023-Ohio-3467, ¶ 135 (8th Dist.), citing *Mueller*.

{¶ 83} Appellant argues that the trial court's decision to prohibit introduction of the videos prevented him from defending the sexual activity between him and A.W., because the rape allegations were fabricated "due to [A.W.'s] affiliation with certain individuals who had previously attempted to kill [appellant]." But, as the trial court noted, there was no evidence connecting A.W. and people who had allegedly tried to kill appellant. Therefore, the trial court correctly prohibited introduction of the videos on that basis.

{¶ 84} In light of the above, the fifth assignment of error is overruled.

**F. Allied Offenses**

{¶ 85} In the sixth assignment of error, appellant argues that the trial court erred in failing to merge the kidnapping and rape offenses. R.C. 2941.25. Ohio's allied-offenses statute states:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 86} In determining whether offenses are subject to merger for sentencing under R.C. 2941.25, courts evaluate three separate factors — the import, the conduct, and the animus. *State v. Ruff*, 2015-Ohio-995, paragraphs one and three of the syllabus. Offenses do not merge, and a defendant may be convicted of and sentenced for multiple offenses if any one of the following is true: (1) the offenses are dissimilar in import or significance, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation. *Id.* at paragraph three of the syllabus, ¶ 25, 31. "The defendant bears the burden of establishing [] entitlement to the protection provided by R.C. 2941.25 against multiple punishments for a single criminal act." *State v. Davids*, 2022-Ohio-2272, ¶ 43 (8th Dist.).

{¶ 87} Offenses are dissimilar in import or significance within the meaning of R.C. 2941.25(B) "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Ruff* at ¶ 23. Thus, "a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense." *Id.* at ¶ 26. "The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import." *Id.*

{¶ 88} Offenses are committed separately within the meaning of R.C. 2941.25(B) if "'one offense was complete before the other offense occurred . . . notwithstanding their proximity in time and that one [offense] was committed in order to commit the other.'" *State v. Woodard*, 2022-Ohio-3081, ¶ 38 (2d Dist.), quoting *State v. Turner*, 2011-Ohio-6714, ¶ 24 (2d Dist.). Thus, "'when one offense is completed prior to the completion of another offense during the defendant's course of conduct, those offenses are separate acts.'" *Woodard* at ¶ 38, quoting *State v. Mooty*, 2014-Ohio-733, ¶ 49 (2d Dist.).

{¶ 89} For purposes of R.C. 2941.25(B), animus has been defined as "'purpose or more properly, immediate motive.'" *State v. Priest*, 2018-Ohio-5355, ¶ 12 (8th Dist.), quoting *State v. Bailey*, 2014-Ohio-4684, ¶ 34 (8th Dist.). "'If the defendant acted with the same purpose, intent, or motive in both instances, the animus is identical for both offenses.'" *State v. Lane*, 2014-Ohio-562, ¶ 12 (12th Dist.), quoting *State v. Lewis*, 2012-Ohio-885, ¶ 13 (12th Dist.). "Animus is

often difficult to prove directly but must be inferred from the surrounding circumstances." *Lane* at ¶ 12, citing *State v. Lung*, 2012-Ohio-5352, ¶ 12 (12th Dist.).

{¶ 90} "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct" and "an offense may be committed in a variety of ways." *Ruff,* 2015-Ohio-995, at ¶ 26, 30.

> "[T]his analysis may be sometimes difficult to perform and may result in varying results for the same set of offenses in different cases. But different results are permissible, given that the statute instructs courts to examine a defendant's conduct — an inherently subjective determination."

*Id.* at ¶ 32, quoting *State v. Johnson*, 2010-Ohio-6314, ¶ 52.

{¶ 91} With respect to the offenses of rape and kidnapping, the Ohio Supreme Court has acknowledged that "implicit within every forcible rape . . . is a kidnapping" because the victim's liberty is restrained during the act of forcible rape. *Asadi-Ousley*, 2017-Ohio-7252, at ¶ 38 (8th Dist.), citing *State v. Logan*, 60 Ohio St.2d 126, 130 (1979).

{¶ 92} In *Logan*, the court provided the following guidelines for determining whether kidnapping and a sex offense are allied offenses that should merge prior to sentencing, stating:

> (a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;

(b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.

*Logan* at syllabus.

{¶ 93} Applying these guidelines, the *Logan* Court held that the offender's conduct in forcing the victim into an alley before raping her at knife point was committed without a separate animus. The Court found that the movement was slight, the detention brief, and the victim was released immediately after the commission of the underlying crime, compelling the Court's conclusion that the kidnapping was incidental to the rape; thus, the offenses merged. *Id.* at 135.

{¶ 94} Appellant contends that the restraint of A.W. in the bedroom (kidnapping) was only to facilitate the sex offenses; thus, that restraint was incidental to the underlying sex offenses and was part of one continuous course of action, appellant released A.W. immediately after the assault (or as soon as she used the rag to wipe herself off), and there was no increased risk of harm associated with A.W.'s restraint apart from that associated with the underlying sexual assault. Appellant concludes that the restraint was done for the purpose of effectuating the underlying rape offenses without any separation of significant length of time or distance.

{¶ 95} The State argues that the offenses should not merge for purposes of sentencing because appellant lured A.W. to his home and then into his bedroom, which were acts separate from the sexual offenses. The State further argues that

after the assault, appellant physically prevented A.W. from leaving his bedroom until she wiped herself off with a rag by blocking her path out of the bedroom. The record belies these contentions. Simply, there was no evidence presented that appellant lured A.W. to his house or into his bedroom. A.W. testified that it was her idea to go over to appellant's house. A.W. also testified that she willingly went into appellant's bedroom because she wanted to see the heartburn medication box before she took the medicine appellant was offering. Finally, A.W. testified that appellant did not prevent her from leaving his house or the bedroom after the sexual assault concluded.

{¶ 96} The evidence presented supports a conclusion that appellant restrained A.W. in his bedroom to facilitate the sex offenses, the restraint was incidental to those offenses, and appellant released A.W. immediately after committing the sex offenses. *See State v. Greene*, 2024-Ohio-2804, ¶ 171 (holding that the rape and kidnapping convictions did not merge when appellant lured victims to his home or to stay with him in a hotel room during travel but the offenses that occurred in the school locker room were subject to merger because the restraint was incidental to the sex offenses). The kidnapping did not result in separate, identifiable harm to A.W. and was not committed with a separate purpose.

{¶ 97} Therefore, it was error for the trial court to have failed to merge the kidnapping with the underlying rape counts. The case is remanded to the trial court for the court to conduct a limited resentencing hearing, at which the court must

merge the kidnapping offense with the underlying rape offenses and the State must elect the offense to which the court shall proceed to sentencing.

**{¶ 98}** The sixth assignment of error is sustained.

**{¶ 99}** Judgment affirmed in part, reversed in part, and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MICHAEL JOHN RYAN, JUDGE

MICHELLE J. SHEEHAN, P.J., and
WILLIAM A. KLATT, J.,* CONCUR

(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of Appeals.)