[Cite as *State v. Hicks*, 2025-Ohio-2520.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | No. 114112 |
| Plaintiff-Appellee, | : | |
| v. | : | |
| JOHN R. HICKS, | : | |
| Defendant-Appellant. | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 17, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-676028-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Stephen Rocco Vernia, Assistant Prosecuting Attorney, *for appellee.*

P. Andrew Baker, *for appellant.*

WILLIAM A. KLATT, J.:

{¶ 1} Defendant-appellant John R. Hicks ("Hicks") appeals from his convictions and sentence for robbery, grand theft, and aggravated menacing following a jury trial. For the following reasons, we affirm.

**Factual and Procedural History**

{¶ 2}   On December 1, 2022, a Cuyahoga County Grand Jury indicted Hicks on Count 1, aggravated robbery in violation of R.C. 2911.01(A)(1); Count 2, robbery in violation of R.C. 2911.02(A)(1); Count 3, robbery in violation of R.C. 2911.02(A)(2); Count 4, robbery in violation of R.C. 2911.02(A)(3), Count 5, having weapons while under disability in violation of R.C. 2923.13(A)(3); Count 6, breaking and entering in violation of R.C. 2911.13(A); Count 7, grand theft in violation of R.C. 2913.02(A)(1); Count 8, failure to stop after an accident in violation of R.C. 4549.02(A)(1); Count 9, aggravated menacing in violation of R.C. 2903.21(A); Count 10, having weapons while under disability in violation of R.C. 2923.13(A)(3); and Count 11, aggravated menacing in violation of R.C. 2903.21(A).  The aggravated robbery, robbery, and breaking and entering charges all carried one- and three-year firearm specifications.

{¶ 3}   Just prior to the start of trial, the State made an oral motion to amend Count 1 of the indictment, asking that the date of the offense be changed from September 27, 2022, to a range of September 27, 2022, through October 14, 2022, to reflect a "continuous course of conduct."  Defense counsel objected.  The State then expanded its request to apply to Counts 1 through 4 of the indictment — the aggravated robbery and robbery charges.  The court granted this motion to amend the indictment over defense counsel's objection.

{¶ 4}   The case proceeded to a jury trial.

{¶ 5} The State called three employees of Relentless Recovery ("Relentless"), a towing and repossession company in Cleveland, Ohio, to testify. The State called Kelsey Reynolds ("Reynolds"), who testified that she was employed as the post-recovery operations manager at Relentless. Reynolds testified that she oversees all ten Relentless locations around the State of Ohio, but on the date of the incident in this case, she was working at the Relentless location in Cleveland. Reynolds described the repossession process, testifying that Relentless is a third-party contractor that receives information from banks or other entities in the form of an order to repossess a car when someone is in default of their security agreement for the car. The State introduced the order to repossess Hicks's car, dated September 24, 2022. The order to repossess was related to a white 2016 Honda Civic and listed Hicks as the debtor; the order identified Hicks's address on Spafford Road in Cleveland. The order also listed the vehicle's license plate information and vehicle identification number ("VIN").

{¶ 6} Reynolds explained that once Relentless receives an order to repossess, it gets dispatched to one of their field agents. If the field agents cannot locate the vehicle after one or two days of checking the addresses listed on the order, the order goes to a "skip team," who continues to investigate the vehicle's owner to identify a current address. Once a vehicle is identified, Relentless will tow the vehicle and notify the police. Reynolds testified that if someone had their car repossessed, they could call the police and learn where the vehicle was repossessed.

{¶ 7} The State introduced a car condition report for Hicks's vehicle, which Reynolds described as a report generated for each vehicle upon its recovery and repossession by Relentless. This report identified that the car was repossessed from 7629 Spafford Road in Cleveland at 5:15 a.m. on September 27, 2022. The report also noted that at the time the vehicle was repossessed, Relentless did not have keys for the vehicle.

{¶ 8} Reynolds testified that on September 27, 2022, around 9 a.m., the white Honda was taken from the Relentless's secured lot in Cleveland. Reynolds did not personally see the vehicle leave the lot, but she was informed of what happened by her employees and called the police to file a report. Reynolds told the police what happened, including that threats were made to her employees. Reynolds testified that in addition to telling the responding officers what had happened, she was also responsible for notifying the lienholder and the owner of the vehicle. Reynolds testified that right after the incident, she discovered that the security cameras on the lot, which were showing a live feed to employees on the lot, were not recording. As a result of this incident, Relentless installed new security cameras.

{¶ 9} J.R. testified that he was employed as a lot tech at Relentless. As a lot tech, J.R. is responsible for taking pictures, inventorying vehicles, and cleaning out vehicles. J.R. testified that he was at work on September 27, 2022, when he noticed a man walk past him, get into a white Honda, and proceed to drive off. According to J.R., the man had driven onto the lot in a dark-colored SUV. Once the SUV entered the lot through the open gate, it stopped, a man got out of the SUV's driver seat and

ran to the white Honda, a woman got out of the SUV's passenger seat and ran to the SUV's driver seat, and both vehicles proceeded to drive off the lot. J.R. testified that another Relentless employee had tried to use a tow truck to unsuccessfully block the Honda from leaving the lot, and the Honda ultimately hit the gate of the lot on the way out.

{¶ 10} The State also called M.C., who testified that she worked at Relentless as the company's mobile locksmith. M.C. testified that she was also working at the Relentless lot in Cleveland on September 27, 2022. M.C. testified that she saw a customer in a dark SUV drive past her at some point onto the lot and initially assumed that they had missed the front entrance and mistakenly driven onto the lot. She then described the same scenario as J.R.: a man got out of the SUV and went directly to a white Honda parked on the lot. M.C. testified that the man immediately started the Honda and both the Honda and the SUV attempted to leave the lot. M.C. stated that two Relentless tow truck drivers, S.C. and S.H., tried to block the vehicles from leaving the lot while other employees tried to call the police. According to M.C., the SUV struck one of the tow trucks, apparently with enough force to move the tow truck, and proceeded to drive around the truck and off the lot. While this was happening, M.C. attempted to close the gate to prevent the vehicles from leaving the lot, but she was not fast enough to do so and ultimately had to jump out of the way to avoid being struck by the Honda as it exited the lot, hitting the gate on the way out.

{¶ 11} M.C. testified that the Honda driver stopped at the end of the driveway "and hopped out of the car and someone said that they spotted a gun in his hand." (Tr. 377.) M.C. testified that she did not see the gun herself and she did not remember the details clearly, but when he hopped out of the Honda, the man yelled "something along the lines of if someone comes back and takes my car again, I'm going to shoot everybody." *Id.*

{¶ 12} J.R. and M.C. both testified that Relentless had numerous security cameras around the lot, but M.C. testified that at the time of this incident, some of the cameras were malfunctioning and not recording.

{¶ 13} The State called Officer Tom Pavlik ("Pavlik"), who testified that on October 14, 2022, he was dispatched to a home on Spafford Road in Cleveland, Ohio at around 8 a.m. Pavlik testified that he and his partner were dispatched to this address because Relentless had located the white Honda that had been stolen out of their lot parked in the driveway at this address. Upon arriving at the home, Pavlik spoke with the caller, a Relentless employee who was there in a tow truck. Pavlik was informed that the owner of the vehicle in question was Hicks and that they were at his address. Pavlik observed a white Honda Civic in the driveway, but the only plate on the vehicle was a custom plate with a star on it. Because the car did not have a license plate, Pavlik attempted to check the VIN but it was covered up with something. Pavlik then requested previous reports to see if there was any additional identifying information for the vehicle and learned that there was some damage to the vehicle's front end, which he confirmed on the car parked in the driveway.

{¶ 14} Pavlik testified that there was a black Jeep parked in front of the driveway, blocking the white Honda Civic. He testified that he called for both vehicles to be towed to the police processing lot and proceeded to wait outside for the tow. According to Pavlik, when the tow arrived, a Black man exited the house and began speaking to him and his partner. The man, who was subsequently identified as Hicks, said, "I'm going back down there. I'm getting my s*** back." The Honda was ultimately towed to the police processing lot, and as the car was being towed, Hicks and a woman were standing on Hicks's front porch and yelling at the officers.

{¶ 15} The State also called Cleveland police detective Joshua Johnson ("Johnson"), who testified that he was assigned to investigate the incident at the Relentless lot. Johnson testified that during his investigation, he also reviewed the body-camera footage from the officers who responded to the Relentless lot and other relevant reports related to the incident. In addition, he spoke to Reynolds and other Relentless employees about the incident.

{¶ 16} Johnson also testified that he investigated a related incident that occurred on October 14, 2022. That day, Relentless employee J.S. located the white Honda Civic parked at a convenience store. A man later identified as Hicks threatened J.S. with a gun as J.S. attempted to tow the white Honda. Johnson testified that he prepared a photo array that another officer presented to J.S. and J.S. was able to identify Hicks as the individual who had threatened him with a gun.

{¶ 17} The State also called Cleveland police detective Trevor Majid ("Majid"), who testified that he was not assigned to this case but became involved when he answered a phone call on October 17, 2022. According to Majid, he received a call from a man who identified himself as Hicks. Majid testified that once he realized that he was speaking with Hicks, who had been identified as a suspect in this case, he turned on his body camera and recorded the remainder of the phone call. The State introduced this body-camera footage at trial. According to Majid, Hicks stated on the phone that his vehicle was stolen from him, and he was attempting to sort the matter out civilly.

{¶ 18} Finally, the State called J.S., who testified that in the fall of 2022, he worked for Relentless as a repossession agent. J.S. testified that on October 14, 2022, he was informed by other Relentless employees that a white Honda Civic had been taken from the Cleveland lot, and he and other repossession agents were allowed to look for the vehicle. J.S. explained that he located the vehicle at a convenience store and was getting ready to tow the vehicle when he saw a man he described as the owner of the vehicle — later identified as Hicks — come out of the store screaming and yelling at him that he was going to shoot J.S. J.S. testified that upon hearing these threats, he left the scene and drove away, turning off his truck's lights when he realized that Hicks was following him. J.S. testified that he was nervous because he had heard from other Relentless employees that Hicks was armed and he "blew through" several red lights trying to escape. (Tr. 526-527.) J.S. testified that eventually Hicks caught up to him, rolled down his window, waved a

gun at him, and said, "[D]on't come looking for my car ever again or I will shoot you and I will shoot anybody else that comes looking for my car." (Tr. 528.)

{¶ 19} J.S. testified that he called the police to report this incident and subsequently identified Hicks in a photo array. J.S. also identified Hicks at trial.

{¶ 20} Near the close of the State's case, it again made an oral motion to amend Count 1 of the indictment to add M.C. as a listed victim and to add a deadly weapon — namely, a motor vehicle — to that count. The court did not immediately rule on this motion.

{¶ 21} At the close of the State's case, the record reflects that the parties agreed that Counts 6, 8, and 11 would not be submitted to the jury. Hicks then made a Crim.R. 29 motion for acquittal as to the remaining counts. As the parties made their arguments related to the Crim.R. 29 motion, the issue of amending the indictment to add M.C. as a listed victim and to add a deadly weapon to Count 1 was also addressed. The court overruled Hicks's Crim.R. 29 motion and granted the State's oral motion to amend the indictment as described above.

{¶ 22} The defense rested without presenting any additional evidence and renewed its Crim.R. 29 motion; the court overruled this motion.

{¶ 23} The jury began deliberations on May 10, 2024. The same day, the court received a note from the jury stating that it was unable to reach a unanimous verdict. The court provided a supplemental instruction taken from 4 Ohio Jury Instructions (2004) 148, Section 503.011(33) and referred to as a *Howard* charge. *See State v. Howard*, 42 Ohio St.3d 18 (1989), paragraph two of the syllabus. That

evening, the jury remained deadlocked as to two counts. Defense counsel moved for a mistrial on all counts. The State requested the court hear the jury's verdict on the remaining counts; the court elected to hear the verdict and hold its decision on Hicks's motion for mistrial in abeyance.

{¶ 24} The jury found Hicks guilty of Count 2, robbery in violation of R.C. 2911.02(A)(1); guilty of Count 7, grand theft in violation of R.C. 2913.02(A)(1); and guilty of Count 9, aggravated menacing in violation of R.C. 2903.21(A). The jury found Hicks not guilty of Counts 3, 5, and 10, as well as all of the firearm specifications. The jury did not reach a verdict on Counts 1 and 4.

{¶ 25} On May 13, 2024, the State moved to dismiss Counts 1 and 4; the court granted this motion and dismissed those counts. Defense counsel withdrew its motion for mistrial. The court referred Hicks for a presentence-investigation report.

{¶ 26} On June 6, 2024, the court held a sentencing hearing. The parties agreed that there were no merger issues to address. The assistant prosecuting attorney, defense counsel, and Hicks addressed the court. The court sentenced Hicks to two to three years in prison on Count 2, 18 months in prison on Count 7, and 180 days on Count 9. The court ordered the sentence to be served concurrently for a total aggregate sentence of two to three years.

{¶ 27} Hicks presents the following six assignments of error for our review:

I. The trial court erred when it permitted the State to amend the date of the indictment.

II. The trial court erred by failing to merge convictions for grand theft and robbery.

III. The grand theft and robbery convictions must be merged due to the ineffective assistance of counsel.

IV. Defendant-appellant's convictions were not supported by sufficient evidence.

V. Defendant-appellant's conviction for robbery was against the manifest weight of the evidence.

VI. The conviction for robbery must be reversed due to the admission of inadmissible hearsay.

**Law and Analysis**

**I. Amendment of the Indictment**

{¶ 28} In Hicks's first assignment of error, he argues that the trial court erred by permitting the State to amend the indictment. Specifically, Hicks challenges the amendment of the date of Counts 1 through 4 from "on or about September 27, 2022" to a date range of September 27, 2022, to October 14, 2022. Hicks also challenges the addition of a new victim and an additional deadly weapon (a motor vehicle). While the amendments impacted Counts 1 through 4, Counts 1 and 4 were dismissed by the State and the jury reached a verdict of not guilty as to Count 3. Therefore, the analysis of this assignment of error involves Count 2, robbery, in violation of R.C. 2911.02(A)(1).

{¶ 29} Crim.R. 7(D) provides that a trial court "may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars in respect to . . . any variance with the evidence, provided no change is made in the name or identity of the crime charged." Under the rule, the State is

permitted to amend an indictment to conform to the evidence provided that there is no change in the name or identity of the offense charged. This court reviews the trial court's decision to permit the amendment of an indictment for abuse of discretion, and to show a reversible error has occurred, a defendant must show not only that the trial court abused its discretion, but also that the amendment prejudiced his defense. *State v. Buchanan*, 2017-Ohio-1361, ¶ 21 (8th Dist.). "A change in the name or identity of a crime charged occurs when the offense alleged in the indictment and the offence alleged in the amended indictment contain different elements that require independent proof." *Id*. at ¶ 22, citing *State v. Mullins*, 124 Ohio App.3d 112, 114 (12th Dist. 1997). Where the amendment does not change the name or identity of the offense, an appellate court should not disturb the trial court's decision to permit the amendment absent an abuse of discretion and a showing of prejudice. *Id*., citing *State v. Moore*, 2016-Ohio-2836, ¶ 29 (8th Dist.).

{¶ 30} In this case, the amendments to Count 2 (robbery) of the indictment expanded the date range, added a new victim, and alleged an additional deadly weapon. The amendments did not change the name or identity of the offence or change the elements required for a conviction. The amendments simply modified the indictment to conform with the evidence as is permitted under Crim.R. 7(D). The trial court did not abuse its discretion by permitting these amendments to Count 2. Moreover, Hicks has not shown that the amendments prejudiced his defense.

{¶ 31} The original indictment was based on two events that occurred on separate dates, weeks apart: (1) Hicks's alleged theft of the car from the Relentless

Recovery lot on September 27, 2022, and (2) Hicks's alleged threats against a Relentless Recovery employee on October 14, 2022. None of the amendments to Count 2 added events not already included in the indictment. In addition, Hicks has not shown how the amendments to Count 2 prejudiced his defense.

{¶ 32} Contrary to Hicks's argument, the amendment of the offense date in Count 2 from September 27, 2022, to a range of September 27, 2022, to October 14, 2022, did not create a risk that Hicks could have been convicted of robbery based on the events that occurred on October 14, 2022. The victims identified in Count 2 were not present when Hicks allegedly threatened a Relentless Recovery employee on October 14, 2022. Moreover, a different Relentless Recovery employee was identified in the counts that were based on the events of October 14, 2022. Lastly, none of the events that occurred on October 14, 2022, involved or suggested a theft offense. It is also clear from the trial transcript that the reason the State requested the substitution of a date range instead of the specific date in Count 2 was to enable it to argue that Hicks's continued possession of the car following the robbery on September 27, 2022, constituted a continuing course of conduct. (Tr. 85-88.) Substituting a date range of September 27, 2022, to October 14, 2022, in place of September 27, 2022, did not prejudice Hicks's defense of Count 2. Nor did the addition of another victim and another deadly weapon to Count 2 change the name or identity of the offence, the elements required for a conviction, or prejudice Hicks's defense. Those amendments were made to conform with the evidence, which is

specifically permitted under Crim.R. 7(D).  Therefore, Hicks's first assignment of error is overruled.

## II. Merger

{¶ 33} In Hicks's second assignment of error, he argues that the trial court erred by failing to merge his convictions for grand theft and robbery.  Specifically, Hicks asserts that the same property — the white Honda Civic — was the subject of both charges.  According to Hicks, the failure to merge his grand theft and robbery offenses constituted plain error.

{¶ 34} R.C. 2941.25, Ohio's allied-offenses statute, states:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 35} In determining whether offenses are subject to merger for sentencing under R.C. 2941.25, courts evaluate three separate factors — the import, the conduct, and the animus.  *State v. Bey*, 2025-Ohio-740, ¶ 86 (8th Dist.), citing *State v. Ruff*, 2015-Ohio-995, paragraphs one and three of the syllabus.  Offenses do not merge, and a defendant may be convicted of and sentenced for multiple offenses, if any one of the following is true: (1) the offenses are dissimilar in import or significance, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation.  *Id.*  Further, the defendant bears

the burden of establishing "'entitlement to the protection provided by R.C. 2941.25 against multiple punishments for a single criminal act.'" *Id.*, quoting *State v. Davids*, 2022-Ohio-2272, ¶ 43 (8th Dist.).

{¶ 36} An accused's failure to raise the issue of merger in the trial court forfeits all but plain error, and a forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice. *State v. Rogers*, 2015-Ohio-2459, ¶ 3. Because Hicks's trial counsel did not raise this issue, a plain-error review is appropriate.

{¶ 37} Count 2 of the indictment, robbery, alleged that Hicks "did, in attempting or committing a theft offense . . . or in fleeing immediately after the attempt or offense upon Relentless Recovery and/or Relentless employee [S.C.] and/or Relentless employee [J.R.], did have a deadly weapon, to wit: a firearm, on or about his person or under his control." This count was amended to add M.C. as a victim and to add a motor vehicle as a deadly weapon.

{¶ 38} Count 7 of the indictment, grand theft, alleged that Hicks "did with purpose to deprive the owner, Relentless Recovery, of 2016 Honda Civic or services, knowingly obtain or exert control over either the property or services without the consent of the owner or person authorized to give consent and the property is a stolen motor vehicle."

{¶ 39} In support of his argument, Hicks points to two cases from this court in which we held that charges should have been merged where they involved the same property. *State v. Cook*, 2011-Ohio-5156 (8th Dist.); *State v. Evans*, 2020-

Ohio-3968 (8th Dist.). In both cases, in addition to the same property being the subject of various theft offenses, the offenses involved the same victim.

{¶ 40} There is no dispute that the stolen property at issue with respect to both the grand theft and robbery charges is the white Honda Civic. However, while both offenses were committed against Relentless, the robbery offense was also committed against Relentless employee M.C., who testified that she jumped out of the way and narrowly avoided being struck by the Honda driven by Hicks. The fact that offenses were committed against different victims precludes them from being subject to merger. *State v. Wilk*, 2022-Ohio-1840, ¶ 68 (8th Dist.), citing *State v. Locke*, 2015-Ohio-3349, ¶ 24 (8th Dist.), citing *State v. Liuzzo*, 2013-Ohio-5028 (8th Dist.); *State v. Chaney*, 2012-Ohio-4933, ¶ 26 (8th Dist.) ("Where a defendant commits the same offense against different victims during the same course of conduct, a separate animus exists for each victim such that the offenses are not allied.").

{¶ 41} Therefore, there was no plain error in the trial court's decision to sentence Hicks separately for grand theft and robbery. Hicks's second assignment of error is overruled.

## III. Ineffective Assistance of Counsel

{¶ 42} In Hicks's third assignment of error, he argues that he was deprived of effective assistance of counsel when his trial counsel failed to request that his grand theft and robbery convictions merge.

{¶ 43} U.S. Const., art. I, § 10 and amend. VI provide that defendants in all criminal proceedings shall have the assistance of counsel for their defense. The United States Supreme Court has recognized that "the right to counsel is the right to effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on a claim of ineffective assistance of counsel, a defendant must prove (1) his counsel was deficient in some aspect of his representation, and (2) there is a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. *Id.* Our review of ineffective-assistance-of-counsel claims requires us to give great deference to counsel's performance. *Id.* at 689. "A reviewing court will strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *State v. Pawlak*, 2014-Ohio-2175, ¶ 69 (8th Dist.).

{¶ 44} Ohio courts have consistently held that "'[c]ounsel is certainly not deficient for failing to raise a meritless issue.'" *State v. Carter*, 2018-Ohio-2238, ¶ 47 (8th Dist.), quoting *State v. Jackson*, 2006-Ohio-174, ¶ 87, citing *State v. Taylor*, 1997-Ohio-243. Specifically, this court has recognized that where the offenses do not merge a defendant cannot establish prejudice from his or her trial counsel's failure to request merger. *State v. Franklin*, 2019-Ohio-3760, ¶ 23 (8th Dist.), citing *State v. Hill*, 2018-Ohio-4327, ¶ 22 (8th Dist.). Having determined that the grand theft and robbery charges were not allied offenses of similar import subject to merger, Hicks cannot show that he was prejudiced by his counsel's actions.

{¶ 45} Hicks's third assignment of error is overruled.

## IV. Sufficiency of the Evidence

{¶ 46} In Hicks's fourth assignment of error, he argues that his convictions were not supported by sufficient evidence. Specifically, he argues that he could not have been convicted for theft offenses because he had a legal interest in the property in question — the vehicle. Hicks also argues that the robbery offense was not supported by sufficient evidence because he did not use a deadly weapon in the commission of that offense.

{¶ 47} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 2009-Ohio-3598, ¶ 12 (8th Dist.). An appellate court's function when reviewing sufficiency is to determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 2004-Ohio-6235, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 48} With a sufficiency inquiry, an appellate court does not review whether the State's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the conviction. *State v. Starks*, 2009-Ohio-3375, ¶ 25 (8th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). A sufficiency-of-the-evidence argument is not a factual determination, but a question of law. *Thompkins* at 386.

{¶ 49} Proof of guilt may be supported "by circumstantial evidence, real evidence, and direct evidence, or any combination of the three, and all three have equal probative value." *State v. Rodano*, 2017-Ohio-1034, ¶ 35 (8th Dist.).

{¶ 50} In support of his first argument, Hicks points to a 1994 case from this court in which we held that a defendant who took his car from a repair shop after a dispute over the adequacy of performed repairs had not committed theft. *State v. Vitale*, 96 Ohio App.3d 695 (8th Dist. 1994). In *Vitale*, this court found that where the garage had voluntarily returned possession of the vehicle to the defendant, there was insufficient evidence to establish theft. The situation in *Vitale* — a dispute over services rendered related to the defendant's vehicle — is not directly relevant to the instant case, in which the evidence presented showed that Relentless Recovery repossessed Hicks's car based on a valid order of repossession. While both defendants have some legal rights in their respective vehicles, there is no evidence in the record that Hicks was attempting to cure the default that resulted in the repossession that would have given him the right to retrieve the vehicle from Relentless.

{¶ 51} In support of his second argument, Hicks asserts that because the jury found him not guilty of the attendant firearm specifications, it could not have found that he committed the robbery offense with a deadly weapon in the form of a firearm. Further, Hicks argues that it is unclear whether Count 2 of the indictment was amended to include a motor vehicle as a deadly weapon, and moreover, there was insufficient evidence that he intended to use the motor vehicle as a deadly weapon.

{¶ 52} It is clear from our review of the record that Counts 1 through 4 of the indictment were amended to add a date range, a victim, and a deadly weapon in the form of a motor vehicle. Further, the record reflects that Hicks recklessly drove a motor vehicle out of the Relentless lot, narrowly avoiding striking M.C. as he fled.

{¶ 53} Hicks argues that he did not have the intent to use the motor vehicle as a deadly weapon. It is well established that an automobile can be classified as a deadly weapon under R.C. 2923.11 when it is used in a manner likely to produce death or great bodily harm. *State v. Kilton*, 2003-Ohio-423, ¶ 25 (8th Dist.), citing *State v. Prince*, 1992 Ohio App. LEXIS 5844, *4 (8th Dist. Nov. 19, 1992). In determining whether an automobile is used as a deadly weapon, a court should not only consider the intent and mind of the user, but also the nature of the weapon, the manner of its use, the actions of the user, and the capability of the instrument to inflict death or serious bodily injury. *Id.*, citing *State v. Upham*, 1997 Ohio App. LEXIS 1992 (12th Dist. May 12, 1997). Further, whether an automobile is used as a deadly weapon is a question of fact for the trier of fact. *Id.*

{¶ 54} Viewing the evidence in the light most favorable to the State, any rational trier of fact could have found that Hicks used the vehicle as a deadly weapon when he drove quickly through the gate, striking the gate and narrowly avoiding striking M.C. For these reasons, there was sufficient evidence to support Hicks's convictions. His fourth assignment of error is overruled.

## V. Manifest Weight of the Evidence

{¶ 55} In Hicks's fifth assignment of error, he argues that his conviction for robbery was against the manifest weight of the evidence. In support of this assignment of error, Hicks repeats his arguments from his fourth assignment of error and asserts that he did not use a motor vehicle as a deadly weapon.

{¶ 56} "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. . . . Weight is not a question of mathematics, but depends on its effect in inducing belief.'" *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 12, quoting *Thompkins* 78 Ohio St.3d at 387. "A conviction should be reversed as against the manifest weight of the evidence only in the most 'exceptional case in which evidence weighs heavily against conviction.'" *State v. Crenshaw,* 2020-Ohio-4922*,* ¶ 24, quoting *Thompkins* at 387.

{¶ 57} As discussed above, the State presented evidence that Hicks did, in attempting or committing a theft offense, or in fleeing immediately after the attempt or offense, did have a deadly weapon — a motor vehicle — on or about his person or under his control. According to Hicks, the "worst part" of his driving as he fled the Relentless lot occurred when he struck the gate as he exited the lot. This is a mischaracterization of the evidence. M.C. testified that she was attempting to close the gate to prevent Hicks from leaving, and the only reason that Hicks did not strike M.C. is that she jumped out of the way just in time. This is not the exceptional case in which the evidence weighs heavily against conviction.

{¶ 58} For these reasons, Hicks's fifth assignment of error is overruled.

## VI. Inadmissible Hearsay

{¶ 59} In Hicks's sixth assignment of error, he argues that his robbery conviction should be reversed due to the admission of inadmissible hearsay. Specifically, Hicks points to M.C.'s testimony, when she stated, over defense objection, that as Hicks was fleeing the Relentless lot, he stopped at the end of the driveway, exited the car, and according to a different employee, had a gun in his hand. According to Hicks, M.C.'s statement that someone else saw Hicks with a gun constitutes inadmissible hearsay.

{¶ 60} The admission or exclusion of evidence is a matter left to the trial court's sound discretion and therefore will not be disturbed absent an abuse of discretion. *State v. Simmons*, 2013-Ohio-1789, ¶ 18 (8th Dist.), citing *State v. Frazier*, 2012-Ohio-1198, ¶ 17 (8th Dist.). An abuse of discretion occurs when a court exercises its discretion in an unwarranted way in regard to a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 61} Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Pursuant to Evid.R. 802, hearsay is inadmissible unless it falls within an exception provided by the rules of evidence. If hearsay statements are improperly admitted, however, this error does not necessarily require reversal of the outcome of the trial if it was harmless. *Simmons* at ¶ 19, citing *Arizona v. Fulminante*, 499 U.S. 279, 306-309 (1991).

{¶ 62} One exception to the prohibition against hearsay statements is the excited-utterance-hearsay exception. An excited utterance is defined as a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2). This court has explained:

> For an alleged excited utterance to be admissible, four prerequisites must be satisfied: (1) a startling event producing a nervous excitement in the declarant, (2) the statement must have been made while still under the stress of excitement caused by the event, (3) the statement must relate to the startling event, and (4) the declarant must have personally observed the startling event.

*State v. Tomlinson*, 2021-Ohio-1301, ¶ 46 (8th Dist.), citing *State v. Brown*, 112 Ohio App.3d 583, 601 (12th Dist. 1996).

{¶ 63} Another exception to the prohibition against hearsay is a present-sense impression. "A present sense impression is '[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness.'" *State v. Jacinto*, 2020-Ohio-3722, ¶ 77 (8th Dist.), quoting Evid.R. 803(1).

{¶ 64} During the State's direct examination of M.C., she described the scene at the Relentless lot when Hicks and his accomplice were attempting to flee the lot. During this explanation, she testified:

> He stopped at the end of this driveway here (indicating) and hopped out of the car and someone said that they spotted a gun in his hand. I didn't see the actual gun myself.

(Tr. 377.)

{¶ 65} This statement meets the requirements of an excited utterance. The employee who said they spotted a gun witnessed the startling event — Hicks and an accomplice breaking into a secured parking lot, Hicks stealing a vehicle, and Hicks fleeing the lot, striking the fence in the process — and the statement was made while still under the stress of the event. Further, the statement clearly related to the event because the employee was likely attempting to alert his coworkers to the perceived threat so that they could adequately secure the lot.

{¶ 66} The statement could also satisfy the requirements of a present sense impression, because it was made by an employee to explain an event during and immediately after the event occurred, and there is nothing to indicate the employee's lack of trustworthiness.

{¶ 67} Moreover, even if this statement was admitted in error, the error was harmless. Crim.R. 52(A) provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." In light of the significant evidence of Hicks's guilt, and the fact that none of his convictions depended on whether or not he had a gun as he fled the Relentless lot, any admission of impermissible hearsay would be harmless.

{¶ 68} For these reasons, Hicks's sixth assignment of error is overruled.

{¶ 69} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

WILLIAM A. KLATT, JUDGE*

EILEEN T. GALLAGHER, P.J., CONCURS IN JUDGMENT ONLY (WITH SEPARATE OPINION);
ANITA LASTER MAYS, J., DISSENTS (WITH SEPARATE OPINION)

(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of Appeals.)

EILEEN T. GALLAGHER, P.J., CONCURRING IN JUDGMENT ONLY:

{¶ 70} I concur with the lead opinion's resolution of the assignments of error; I write separately, however, regarding the sixth assignment of error. I believe that M.C.'s statement, "[S]omeone said that they spotted a gun in his hand[,]" without any foundation or further testimony regarding the declarant, did not constitute an excited utterance or present-sense impression. I agree, however, that any error in the admission of this statement was harmless, given the other evidence of Hicks's guilt.

{¶ 71} "Ohio case law shows that, often, statements made by victims of crimes may be introduced as present[-]sense impressions or excited utterances if they were made while the victim 'was in fear and under the stress of a startling event

. . . and were not the product of reflective thought.'" *State v. Bunch*, 2010-Ohio-515, ¶ 17 (8th Dist.), citing *State v. Leonard*, 2004-Ohio-6235, ¶ 94.

{¶ 72} With regard to the excited-utterance exception, the Supreme Court of Ohio has laid out four factors for a trial court to consider in evaluating the admissibility of such a statement:

> (a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective, (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, (c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and (d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration.

*State v. Taylor*, 66 Ohio St.3d 295, 301 (1993), quoting *Potter v. Baker*, 162 Ohio St. 488, 501 (1955). The hearsay exception for an excited utterance "'derives its guaranty of trustworthiness from the fact that [the] declarant is under such state of emotional shock that his reflective processes have been stilled.'" *Id*. at 300, quoting McCormick, *Evidence*, § 297 (2d Ed. 1972).

{¶ 73} Here, it is clear that there was a startling occurrence when Hicks was attempting to flee the Relentless lot. However, there was no testimony or evidence regarding the impact of the event on the unidentified speaker or the speaker's emotional state. M.C. did not describe how the speaker sounded or any other

circumstances that would indicate the speaker's stress level following the startling occurrence.

{¶ 74} In order to qualify as an excited utterance, case law in Ohio requires evidence that the statement was a reactive, excited statement made by the speaker, while still under the stress of the event. *See Taylor* (holding that "merely being 'upset'" did not meet the standard for admissibility under Evid.R. 803(2)); *State v. Norman*, 2019-Ohio-2225 (8th Dist.) (testimony that the declarant sounded "a little nervous, edgy" and that her voice sounded "different than normal" was insufficient for statements to qualify as excited utterances under Evid.R. 803(2)); *State v. Dengg*, 2009-Ohio-4101 (11th Dist.) (finding that testimony that a victim was "crying" and "visibly upset" was not sufficient to constitute an excited utterance); *accord State v. Ford,* 2018-Ohio-2128, ¶ 33 (8th Dist.) (finding excited utterance where declarant had been in a car accident and testimony described her as "in shock, shaken, disoriented, crying, speaking in a different language initially, and then finally answering questions in English")*; State v. Collins,* 2013-Ohio-5579, ¶ 14 (statement constituted excited utterance where speaker reported that he had just been robbed and was said to be "frantic," and appeared "afraid").

{¶ 75} It was the State's obligation, as the party seeking admission of the statement under Evid.R. 803(2), to lay the proper foundation. *State v. Jones,* 2023-Ohio-380 (8th Dist.), citing *State v. Hill*, 1981 Ohio App. LEXIS 14266, *4 (12th Dist. Mar. 1, 1981) ("The burden of proving facts which must be established to make evidence admissible is upon the party seeking to introduce the evidence."); *State v.*

*Stover*, 2014-Ohio-2572, ¶ 12 (9th Dist.) (The State sought to admit statement under excited-utterance exception to the hearsay rules and therefore had the burden to prove that the statement was made while the declarant was still under the stress of the event.). Because there was absolutely no testimony that could lead us to any conclusion about the speaker's emotional state or stress level, a proper foundation had not been laid to find that the statement constituted an excited utterance. Consequently, M.C.'s statement that "someone said that they spotted a gun in his hand[ ]" should have been excluded.

{¶ 76} I further believe that the statement should also not have been admitted as a present-sense impression under Evid.R. 803(1). The key to the trustworthiness of a statement qualifying as a present-sense impression is "the spontaneity of the statement; it must be either contemporaneous with the event or be made immediately thereafter." *Cleveland v. Myles*, 2022-Ohio-4504, ¶ 26 (8th Dist.), quoting *State v. Essa*, 2011-Ohio-2513, ¶ 126 (8th Dist.). There was no testimony as to when the statement at issue was made. While we could assume from M.C.'s testimony that the statement was made while the events were occurring, we cannot say that absolutely. Again, the State failed to provide a foundation for the statement to be admitted as an exception to the hearsay rule. I do not believe the statement qualified as a present-sense impression, and it should have been excluded.

{¶ 77} However, even if the statement was improperly admitted as either an excited utterance or a present-sense impression, there was no prejudice to Hicks.

The jury was able to convict him using the vehicle as the deadly weapon, and evidence regarding Hicks's possession of a firearm was unnecessary. Thus, I agree with the lead opinion that any error was harmless, and Hicks's convictions should be affirmed.

ANITA LASTER MAYS, J., DISSENTING:

{¶ 78} I respectfully dissent. I would find that the trial court abused its discretion by permitting the State to amend the indictment in a manner that substantively altered the identity of the offense, in violation of Crim.R. 7(D).

{¶ 79} At the outset, the indictment charged Hicks with robbery based on an incident alleged to have occurred on or about September 27, 2022, involving the use of a firearm. After the presentation of witness testimony at trial, the State successfully moved to amend the indictment, not only to expand the date range of the charged conduct, but to introduce a new alleged victim (M.C.) and substitute a different deadly weapon (a motor vehicle) in place of the originally alleged firearm. These amendments fundamentally shifted the factual basis of the offense and the theory upon which the State proceeded.

{¶ 80} Although Crim.R. 7(D) allows for amendments that do not change the name or identity of the offense, Ohio courts have consistently held that the essential facts constituting the offense for which the defendant is tried must be found in the indictment of the grand jury. *State v. Headley*, 6 Ohio St.3d 475, 478-479 (1983). The Ohio Const. art. I, § 10 states in part that "no person shall be held to answer for a capital, or otherwise infamous, crime, unless on presentment or indictment of a

grand jury." *State v. Vitale*, 96 Ohio App.3d 695, 699 (8th Dist. 1994). "This provides an inalienable protection to the defendant that he will be tried on the same essential facts on which the grand jury found probable cause." *Id.* When vital elements identifying the crime are not in the indictment a trial court cannot cure the defect by amendment because the addition of new essential facts would allow a conviction based on facts not presented to the grand jury, in violation of the Ohio Const. art. I, § 10. *E.g.*, *State v. Wood*, 2025-Ohio-1182 ¶ 109 (8th Dist.).

{¶ 81} Here, the identity of the robbery charge was materially altered. Hicks was initially indicted for allegedly using a firearm in the commission of a theft offense. The amendment introduced a distinct theory: he used a vehicle as a deadly weapon and his conduct endangered a different individual. These facts were neither presented to the grand jury nor included in the original charging document. "[A] court cannot assume that a grand jury would have included in its indictment an additional incident of criminal conduct." *Vitale* at 700.

{¶ 82} Further, the amendments prejudiced Hicks's ability to prepare a defense. He was required to respond at trial to factual allegations and legal theories that were not disclosed in the original indictment. The trial court's jury instructions reflected the altered theory by inviting the jury to convict Hicks based on conduct involving "a firearm and/or motor vehicle." The jury acquitted Hicks of the firearm specification, indicating that the conviction for robbery rested on the post-indictment theory involving the vehicle and new victim. This undermines the grand-

jury process and violates the constitutional guarantee of indictment by grand jury under the Ohio Const. art. I, § 10.

{¶ 83} Permitting the State to amend an indictment to reflect newly developed factual theories during trial, particularly when those theories were not presented to the grand jury, erodes the defendant's constitutional right to notice and contravenes. Crim.R. 7(D). The amendments in this case were not minor clarifications; they were substantive alterations that changed the nature of the charged offense.

{¶ 84} Accordingly, I would reverse Hicks's conviction for robbery on Count 2 and remand the matter for further proceedings.